IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOUGLASS VANDUSER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:11-cv-00317 |
| v. ) | |
| ) | |
| PURDY BROTHERS TRUCKING ) | By: Hon. Robert S. Ballou |
| COMPANY, INC. ) | United States District Judge |
| ) | |
| and ) | |
| ) | |
| CURTIS J. MCNEALY ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' Motion to Quash the subpoena commanding Danny Robinson to appear for deposition on October 19, 2011 (Dkt #34). For the reasons set forth below, Defendants' Motion to Quash is **DENIED**, subject to certain conditions.

I.      Procedural History

This case arises out of an automobile accident that occurred on July 4, 2010, between Plaintiff's vehicle and a tractor-trailer owned by Defendant Purdy Brothers Trucking Company, Inc. and driven by its employee, Defendant Curtis J. McNealy ("McNealy"). Plaintiff filed a Complaint against Defendants with two counts: 1) negligence, and 2) negligent hiring, training, supervision and retention. Count II was later dismissed by agreement of the parties.

On October 5, 2011, Plaintiff issued a subpoena duces tecum to Danny Robinson of Robinson & Associates to appear for a deposition on October 19, 2011. Attached to the

1

subpoena is a list of documents to be produced by Mr. Robinson at the deposition. On October 14, 2011, Defendants filed a Motion to Quash the subpoena to Mr. Robinson on the grounds that all information obtained by Mr. Robinson constitutes work product because Mr. Robinson was retained by Defendants to perform an investigation regarding the accident in anticipation of litigation.

A hearing was held on this matter on October 18, 2011. During the hearing, counsel for Defendants represented that they did not object to Mr. Robinson's deposition, but were seeking constraints with regard to the scope of information that could be sought in the deposition. Defendants further argued that the documents sought from Mr. Robinson were protected by the work product doctrine.[1] The court took this matter under advisement and ordered an *in camera* production of Mr. Robinson's complete file arising out of his investigation of the accident.

On October 19, 2011, Defendants produced the entire file from Robinson & Associates and Mr. Robinson for *in camera* review, as well as all documents which, to the best knowledge of Defendants' present counsel, have been produced to Plaintiff. The court notes that Defendants' present counsel was not involved in any prior document production or the preparation of answers to interrogatories; however, Defendants' Counsel endeavored to provide the court with a copy of those documents in her file which she believes were produced to Plaintiff by Defendants' prior counsel. Having reviewed the documents produced *in camera*, the court now **DENIES** Defendants' Motion to Quash the deposition of Mr. Robinson, subject to the conditions set forth below.

II. Factual History

---

[1] Given Defendants representation at the hearing as to the type of protection they were seeking from the court, the court will treat Defendants' Motion to Quash the deposition of Mr. Robinson as a motion for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

2

Plaintiff was involved in a severe automobile accident with Defendant McNealy on July 4, 2010 at approximately 2:24 p.m. on Interstate 81 in Wythe County, Virginia. Plaintiff suffered significant injuries in the accident and was airlifted from the accident scene to Roanoke Memorial Hospital. Plaintiff underwent surgery the day of the accident and spent a period of time in intensive care before being transferred to a rehabilitation facility in his hometown of Charlotte, North Carolina.

On the afternoon of July 4, 2010, Defendants' liability insurance carrier, Great American Casualty Company ("Great American"), hired Robinson & Associates and Danny Robinson to investigate the accident. Mr. Robinson travelled to the accident scene the afternoon or evening of July 4, conducted interviews, obtained photographs and otherwise initiated the investigation of the facts and circumstances of the accident on behalf of Great American. The records reviewed *in camera* show that the following day Mr. Robinson, with Plaintiff's permission, interviewed Plaintiff in the intensive care unit of Roanoke Memorial Hospital. This interview is memorialized in both handwritten notes, presumably from Mr. Robinson, and a report to Great American on July 10, 2011. The report further details the activities of Mr. Robinson and his investigation in the week following the accident, including the interviews conducted and other efforts undertaken.

Mr. Robinson prepared a second report on July 15, 2010 which discussed the investigation undertaken for Great American, including Plaintiff's continued hospitalization at Roanoke Memorial Hospital, interviews conducted and the hiring of an engineering firm to assist with the investigation.

3

On August 9, 2010, Mr. Robinson interviewed Plaintiff a second time with permission while he was hospitalized at Carolina Specialty Hospital in Charlotte, North Carolina. Plaintiff refused to allow either interview with Mr. Robinson to be recorded. The interview at Carolina Specialty Hospital is memorialized in both handwritten notes and a report dated August 30, 2011. The report of August 30, 2011 also outlines the investigation activities undertaken by Mr. Robinson to that point.

Mr. Robinson's investigation included his efforts to inspect Plaintiff's vehicle, which had been taken to a storage facility from the accident scene. Apparently, this storage facility would not permit Mr. Robinson to inspect Plaintiff's vehicle until all incurred storage fees were paid. On July 21, 2010, Great American gave notice to Plaintiff's insurance carrier, Auto-Owners Insurance Company, that it had a duty to preserve Plaintiff's vehicle to allow Great American, through its investigator, to inspect and photograph the vehicle and download any available ECM data. At the time, Auto-Owners was adjusting any property damage claim of Plaintiff under its collision coverage. Auto-Owners would have a subrogation claim against Defendants for any amounts paid under its collision coverage.

On August 26, 2010, Robinson & Associates received a phone message from an individual named Sherry Lee, who identified herself as being associated with a law firm representing Plaintiff. Ms. Lee called again the following day and left a message that she was a secretary with the firm of Staten L. Wilcox, P.A. in Charlotte, North Carolina. On August 27, 2010, Staten L. Wilcox with Saten L. Wilcox, P.A. faxed a letter to Mr. Robinson stating that his firm had been retained to represent Plaintiff "in connection with personal injuries and property damages sustained in [the] automobile accident . . ." Great American retained Defendants'

4

counsel on August 27, 2010 to represent Defendants in connection with Plaintiff's claim for his personal injuries.

   III.   Analysis

The Federal Rules of Civil Procedure memorialize the work product doctrine at Fed.R.Civ.P. 26(b)(3)(A), which protects from discovery materials prepared "in anticipation of litigation or for trial," by a party or its representative (including the party's attorney, consultant, surety, indemnitor, insurer or agent).  Rule 26(b)(3)(A) allows discovery of work product materials only (i) if "they are otherwise discoverable under Rule 26(b)(1)," and (ii) if the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id*.

There are two types of work product material: opinion work product and fact work product.  *In re: Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir.1994).  Opinion work product includes the thoughts, opinions, conclusions, legal theories and mental impressions of an attorney.  *Id.* (citing *In re John Doe,* 662 F.2d 1073, 1079-80 (4th Cir.1981)).  Opinion work product may only be discovered in "extraordinary circumstances," and the requesting party must show a "compelling" need.  *In re John Doe,* 662 F.2d at 1080.  On the other hand, fact work product constitutes all other documents and tangible things prepared in anticipation of litigation or for trial. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992).  A party may discover fact work product upon a showing of substantial need and an inability to obtain substantially equivalent materials by alternate means without undue hardship.  F.R.Civ.P. 26(b)(3)(A)(ii).

5

To determine whether materials sought from Mr. Robinson are protected by the work product doctrine, the court must 1) determine whether the documents were prepared in anticipation of litigation and if so, 2) determine whether Plaintiff has demonstrated a substantial need for the information and cannot obtain substantially equivalent information through other means.

a. Materials prepared in anticipation of litigation

Documents or material prepared by or for a party are not cloaked with work product immunity merely because litigation eventually ensues. Rather, the Fourth Circuit has explained that the work product doctrine protects documents

> prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus. . . materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir.1992) (quotation omitted) (emphasis in original) (citations omitted). The "because of" standard in *National Union Fire Insurance Co.* is "designed to help district courts determine the driving force behind the preparation of the work product" and to differentiate between materials created in anticipation of litigation and those created in the ordinary course of business. *Botkin v. Donegal Mutual Ins. Co.*, 2011 WL 2447939 at *2 (W.D.Va. June 15, 2011) (citing *RLI Ins. Co. v. Conseco, Inc.*, 477 F.Supp.2d 741, 746–47 (E.D.Va. 2007)).

Work product claims involving an insurance company's claim file are unique insofar as "[t]he nature of the insurance business requires an investigation prior to the determination of the insured's claim." *State Farm Fire & Cas. Co. v. Perrigan*, 102 F.R.D. 235, 237 (W.D.Va.1984).

6

There is no bright-line test to determine when an insurance company claim file is protected by the work product doctrine. *Id*. at 238. This analysis is undertaken on a case-by-case basis to determine when the focus of the insurance company's investigation of a loss is because litigation is "fairly foreseeable." *Id*.

It is important to distinguish between first party and third party insurance claims in determining when an investigation by or for an insurance company is in anticipation of litigation. First party claims arise when an insured seeks payment under the terms of an insurance policy. A first party claim generally does not involve an investigation of the insured's tort liability. Instead, the insurance carrier's "ordinary business" in a first party claim is to adjust and to pay, if covered, the claim of the insured. The prospect of litigation, therefore, is not initially contemplated at the outset of the investigation of a first party claim.

A third party claim arises due to the assertion of liability against an insured, and thus the investigation of a third party claim relates, in large part, to determining the legal liability of the insured. Third party liability insurance is purchased to protect against legal liability, and is, in many respects litigation insurance. An insurance carrier in a third party claim not only must indemnify an insured against legal liability, but it must also defend the insured against claims asserted. The insurance carrier fulfills this role not only by defending any lawsuit filed against the insured, but also by making a full and complete investigation as soon as practicable after the occurrence giving rise to potential liability. Liability claims, such as the one at issue in this case, involve investigations which, given the nature of liability insurance, anticipate the possible defense of the insured against third party litigation. Thus, the very nature of the relationship between the third party and the insurer is adversarial from the start.

7

In this case, the court finds that the prospect of litigation was "fairly foreseeable" when Great American retained Robinson & Associates to investigate this claim. This accident was particularly serious given the extensive damage to Plaintiff's vehicle and the injuries suffered by Plaintiff at the accident scene. Further, Defendant McNealy, Purdy Brothers Trucking Company, Inc. and Great American knew that the investigating officer charged Defendant McNealy with reckless driving. This charge suggested that Defendant was a legal cause of the accident. Plaintiff was airlifted from the accident scene to Roanoke Memorial Hospital and underwent surgery on July 4, 2010. Plaintiff stayed in the intensive care unit at Roanoke Memorial Hospital for a significant period and was released to a rehabilitation facility in Charlotte, North Carolina. Additionally, Plaintiff retained counsel within two months of the accident. Likewise, Defendants retained counsel as soon as Plaintiff's attorney contacted Robinson & Associates.[2] Given these facts, Great American would have foreseen litigation arising from the accident as of July 4, 2010. Thus, any documents or other investigation material created by Mr. Robinson after July 4, 2010 are protected by work product privilege.

    b. <u>Substantial need and undue hardship</u>

A finding that Mr. Robinson's investigation is protected work product does not end the inquiry. Mr. Robinson's fact work product may be discoverable on a showing of substantial need for the materials and that the substantial equivalent cannot be obtained without undue hardship. F.R.Civ.P. 26(b)(3)(A)(ii). In determining whether there is a substantial need, the court may take into account the material's "relevance and importance and the availability of the

---

[2] In *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542 (N.D.W.Va. 2000), the Northern District of West Virginia, citing *Perrigan,* found the following factors significant in analyzing whether litigation was "substantial and imminent" for a third party insurance work product privilege claim: "the nature of the documents, the nature of the litigation, the relationship between the parties[,]. . . any other fact peculiar to the case, . . .[and] the time when the document is created."

8

facts from other sources." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Regarding witness statements and pictures taken immediately after an accident, the Fourth Circuit has noted that:

> Statements of either the parties or witnesses taken immediately after the accident and involving a material issue in an action arising out of that accident, constitute "unique catalysts in the search for truth" in the judicial process; and where the parties seeking their discovery was disabled from making his own investigation at the time, there is sufficient showing under the amended Rule to warrant discovery.

*McDougall v. Dunn,* 468 F.2d 468, 474 (4th Cir.1972).

The court must also determine whether Plaintiff can obtain the substantial equivalent of the protected information through other discovery means. Generally, if a party can obtain substantially equivalent information through other sources of discovery, the court will not require the disclosure of work product documents. For example, witness statements which are work product may not be discoverable where the witnesses are available to be deposed. *See Federal Election Com'n v. Christian Coalition*, 178 F.R.D. 61, 86 (E.D.Va.1998); *see, e.g., United States v. Chatham City Corp.,* 72 F.R.D. 640, 644 (S.D.Ga.1976) (denying discovery of witnesses' statements because "a substantial equivalent of witnesses' statements can be obtained by. . . deposition."). However, even when witnesses are available to be deposed, certain factors such "as lapses of time between the information being recorded in the document and the litigation, forgetfulness of witnesses, or the possibility that witnesses may be hostile can lead a court to conclude that the substantial equivalent of the work product protected document may not be available through deposition." *Christian Coalition Federal Election Com'n v. Christian Coalition*, 178 F.R.D. 61, 86 (E.D.Va.1998). *See, e.g., Southern Railway, Co. v. Lanham,* 403 F.2d 119 (5th Cir.1968).

IV.     Application

9

The court finds that Plaintiff has demonstrated a substantial need for certain work product documents prepared by Mr. Robinson in connection with his investigation. The numbered summaries of the interview with Plaintiff conducted on July 5, 2011 and August 9, 2011 from the July 10, 2010 report and the August 30, 2010 report of Mr. Robinson, respectively, are work product. The court finds that Plaintiff has no other means to determine what he may have stated to Mr. Robinson given his potentially compromised state when he was a patient at Roanoke Memorial Hospital and Carolina Specialty Hospital. Thus, Plaintiff is entitled to know the statements attributed to him during those interviews. Therefore, those portions of the July 15, 2010 and August 30, 2010 reports are discoverable.

The court finds that the remainder of both of these reports (with the exception of the photographs noted below) are protected by the work product privilege insofar as it contains mental impressions, conclusions, and opinions. Plaintiffs have no "compelling" need or extraordinary circumstances that would otherwise make opinion work product discoverable. *In re John Doe,* 662 F.2d 1073, 1079-80 (4th Cir.1981).

The court also finds that the two undated accident scene diagrams and photographs prepared either by or for Mr. Robinson, although protected work product, are discoverable because Plaintiff was hospitalized and could not investigate the accident scene and secure accurate measurements or photographs of the conditions, including the placement of any debris, skid marks, yaw marks or other important facts available only through an investigation of the accident scene. The court does note that the July 10, 2010 report refers to certain photographs taken by the defendant driver at the accident scene with a disposable camera, which were sent in electronic format to the insurance carrier. The court did not see these photographs in the file produced for review, and such photos should be produced, if that has not already occurred.

Robinson & Associates and Mr. Robinson are not required to produce the descriptions of the photographs, which the court finds to be mental impressions and therefore, undiscoverable opinion work product.

Additionally, the court finds that the following documents are not privileged work product and are discoverable:

1. The letter dated August 27, 2010 from Staten L. Wilcox with attached cover page;
2. All Health Insurance Claim Forms related to medical treatment received by the plaintiff;
3. The phone messages dated August 26 and 27, 2010 from Sherry Lee;
4. All repair estimates of the plaintiff's vehicle and any photographs of the plaintiff's vehicle; and
5. The towing bill from Steve's Towing & Repair for the plaintiff's vehicle.

V. Scope of the Deposition of Mr. Robinson

With regard to the scheduled deposition of Mr. Robinson, Plaintiff may not use the deposition as a tool to obtain facts, data or other materials which are protected from discovery under the work product doctrine. That is, the deposition of Mr. Robinson is limited to determining the facts of the investigation implicating Mr. Robinson. Plaintiff may not inquire into the statements taken from witnesses other than Plaintiff, and cannot inquire into the facts, data or opinions communicated to the insurance carrier. In short, the deposition of Mr. Robinson is limited to determining what he did during his investigation and the identity of persons with discoverable factual information regarding this accident. Plaintiff should be able to, thereafter, interview, depose or otherwise investigate the persons with knowledge of the accident. As to the documents the court has found must be produced pursuant to this opinion and order, Plaintiff

11

may inquire only as to the facts underlying such documents, but cannot delve into any opinions or analysis developed regarding such documents. Finally, should Plaintiff find that he is unable to obtain the substantially equivalent information through interviews or depositions of the persons with knowledge, the court will consider any further request for discovery of this information.

Accordingly, for the reasons set forth above, it is **ORDERED** that Defendants' Motion to Quash the deposition of Mr. Robinson (Dkt. #34) shall be, and hereby is, **DENIED**, subject to the conditions set forth above.

The Clerk's office is directed to provide a copy of this Order to counsel for the parties.

Entered: October 21, 2011

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge